UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

Lena Lasher, Plaintiff
Federal Prison Camp
33 1/2 Pembroke Rd.
Danbury, CT 06811
Register # 67662-054

vs.                    CIVIL ACTION NO.

DEA Agent Thomas Popowich, "individually and in his official capacity"
DEA Agent Germano, "individually and in his official capacity"
DEA Agent Matthew Murphy (Clinton, NJ police task force), "individually and in his official capacity"
DEA Agent John Sheridan, "individually and in his official capacity"
DEA Agent Anthony J. Rego, "individually and in his official capacity"
DEA Agent Steven Fischer, "individually and in his official capacity"
Drug Enforcement Administration (DEA)
80 Mulberry Street
Newark, NJ 07102

Jurisdiction is asserted pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and 28 U.S.C. Sect. 1331.

I am a wrongly convicted and sentenced federal prisoner.

COMPLAINT (STATEMENT of CLAIMS) AND JURY DEMAND

1. An adverse decision of the Southern District of New York (SDNY) was rendered on May 14, 2015 which wrongly convicted the Petitioner of a crime she did not commit.

2. The DEA discriminated against the plaintiff because of her race, national origin, and sex and therefore further reinforced by the other coordinating agencies which is a violation of the Constitution (Amendment 5 and 6), by going to trial and exercising her constitutional rights; others (white males) who have testified at plaintiff's trial that they committed the crime (guilty by admission) were not punished by the Drug Enforcement Administration while the plaintiff, an Asian female of Vietnamese descent was violated. This is discriminatory, a deprivation of plaintiff's civil right, and is a violation of substantial due process.

The DEA diligently worked to frame the Petitioner:

1. In November 2012, DEA Agent John Sheridan of Newark, NJ mislead and lied to the grand jury of the Southern District of New York to wrongfully obtain the indictment. He testified that the Plaintiff, including but not limited to the following:

A. Was the pharmacist in charge of Palmer Pharmacy & Much More. However, Mr. Sheridan knew that the prosecutor's

witness, Steven Goloff, was the pharmacist in charge of Palmer Pharmacy & Much More; his name was on the entrance of the pharmacy door, as well as on the pharmacy's license.

B. Dispensed/shipped butalbital, a controlled substance. However, butalbital was never stocked at the pharmacy, the plaintiff never dispensed butalbital, the doctor never prescribed butalbital, and the wholesaler never sent butalbital to the pharmacy.

C. And/or the co-conspirator Peter J. Riccio billed website operators. However, Mr. Sheridan knew the plaintiff never billed website operators; he used the words and/or to mislead the jury, as if the plaintiff had controlled of the businesses.

D. And/or the co-conspirator Peter J. Riccio received funds by wire. Again, Mr. Sheridan knew the plaintiff never received funds by wire; he used the words and/or to mislead the jury. He knew that the plaintiff never had access/control to any account and did not profit nor gain from the businesses.

E. Was the signatory of bank accounts. However, he knew the plaintiff never had access to any check nor to any account.

F. Refused to speak on the phone with other Pharmacist. However, as the video recordings depicted, the plaintiff is always on the phone with customers, doctors, nurses, and other pharmacists.

G. Dispensing invalid prescriptions. However, none of the prescriptions the plaintiff dispensed via the fulfillment pharmacy were controlled substances, as he falsely testified, and as confirmed via the the suppressed/tampered video recordings.

H. Received bonuses for volume and that he does not know of any pharmacist who was paid bonuses. Again, Agent Sheridan misled the jury; it is common for pharmacists to be paid bonuses for volume, as a part of an inducement to increase businesses. In fact, the Plaintiff has received bonuses at her previous employments (Rite-Aid, CVS, Stop & Shop, to name a few).

Because of Agent Sheridan's false and misleading testimonies, an indictment was obtained; thus, denying the Plaintiff her constitutional right, the right to face her accuser(s).

2. On November 29, 2012, the DEA of Newark, New Jersey, and its agents Rego and Fischer took possession of the Riccio's pharmacies (Dunellen, NJ) video recordings. Not only was the video recordings suppressed (a Brady Violation, a Fourth Amendment Right Violation), the information was also exculpatory. Upon the first review after extensive litigating for possession, the Plaintiff noticed that the video recording was tampered with. This further violation of the Plaintiff's constitutional right due to the video recording tampered and suppressed wherefore a Brady Violation (exculpatory evidence) as well as the agents' misconduct occurred; there were scenes deleted/extracted from the video recordings. The video recordings contradicted the DEA's agents, Agent Popowich, Agent Germano, and Agent Murphy testimonies in that the Petitioner followed all the governing pharmacy rules and regulations in that she properly counted (weighing pills is also legal), labeled and stored, destroyed medications properly, and dispensed medications with valid prescriptions, which were verified

by doctors.

The DEA failed to realize there were "back-up cameras" confirming the tampering of the video recordings, thus contradicting the DEA's agents testimonies.

3. On November 29, 2012, the DEA of Newark, NJ took possession of the Petitioner's cell phone (16 Patton Street, High Bridge, NJ). They planted photos onto her phone; the photos, allegedly from the Petitioner's cell phone, were used at trial to falsely imply or misled the jurors as if the Petitioner monitored/supervised the pharmacy via her cell phone to deceive the Court and the jury, as these photos were no where in discovery nor on the Petitioner's cell phone, and a clear violation of Brady as well as a violation of Petitioner's 5th Amendment Right. Furthermore, the photos do not reflectively show what they were purported to show. To date, the DEA still has possession of the Petitioner's cell phone and refuse to return it to her, as well as the "alleged" photos on her cell phone which were used at trial to her so that she can have an independent expert forensic analysis to analyze her cell phone.

4. On November 29, 2012, DEA Agent Germano and Agent Thomas Popowich of Newark NJ "raided" Hellertown Pharmacy and Palmer Pharmacy & Much More in Pennsylvania. The conduct of their investigation ruined the integrity of the evidence in that they "comingled the active drugs with the "returned drugs to be destroyed"; they did not put one tote in one box to assure the integrity of the tote was maintained. In other words, Agent Popowich and Germano tampered with the evidence either at the pharmacy or anywhere between then and the day of the trial. On the day of the trial, Agent Germano "planted" the evidence to falsely accuse the petitioner of dispensing "recycled/returned meds". The video recordings, which was suppressed (exculpatory evidence), a Brady violation (4th Amendment Right Violation), will show the daily activity of the work flow in the pharmacies, which contradicted the agents false testimonies. Furthermore, testimonies provided by DEA agents were not only just false, they were also misleading because their testimonies did not match their own spreadsheets, pharmacy business records, and 3500 Jenkin material of pharmacists. Agent Germano, Popowich, and Murphy's false/misleading testimonies were a part of the Plaintiff's wrongful conviction; they deceived the jury through their:

A. Misrepresentations, false representation, and lack of evidence, as seen in their own spreadsheets.

(1). The drug "butalbital" that the Petitioner was indicted and convicted of never existed in the pharmacy nor ever handled by the Petitioner.

(2). The lack of prescriptions and invoices for "butalbital".

B. Misinformation, heresay statements, misleading evidence and false representation, by presenting "incomplete work" (unlabeled vials) as complete work, and presenting "returned drugs" as being re-used/stored with "active drugs"; thus the pharmacy business records and paperwork will display the agents' false testimonies.

C. General handling of the investigation of the Plaintiff's case by withholding evidence of, including but not limited to:

(1). Sheets which stated "all these totes need labels," indicating work was not completed by staff and there was every intention to finish the work and follow the law.

(2). Counted bottles which were labeled properly as per law.

(3). Withholding:

a. The information and misrepresenting the fact that the Petitioner was not on duty on October 2, 2012, the day Officer Matthew Murphy observed two "disheveled" and "unkempt" looking individuals entering Hellertown Pharmacy and exiting with white pharmacy bags.

b. "Completed work"

Agent Popowich and Germano misrepresented the evidence in that they showed the Court and the jury "(unlabeled vials) incomplete work" as "complete work". They withheld evidence which states "all these totes need labels", indicating work was not completed by staff and there was every intention to finish the work and follow the law. In pharmacy practices, much work is not completed on a daily basis -this only means the work will be completed as soon as staff gets a chance to finish it; Agent Popowich and/or Germano hid this information from the jury to mislead the jurors. The exhibit indicated these totes were uncompleted work. Incomplete work does no mean a violation of the law; incomplete work is not a crime.

The Agents also withheld "empty manufacturer bottle" with all the proper labeling, including its drug name, strength, quantity, ndc#, lot#, and expiration date which were inside each counted tote of drugs, from the Court and the jury; the empty manufacturer bottles are crucial in that they indicated the pharmacy stored meds properly, as required by law.

5. Officer Matthew Murphy of Newark, NJ and Clinton, NJ:

A. Testified that on October 2, 2012, he observed two "disheveled" and "unkempt" looking individuals entering Hellertown Pharmacy and exiting with white pharmacy bags. However, On October 2, 2012, the Petitioner was NOT working at Hellertown Pharmacy. Pharmacy records clearly show that on October 2, 2012, it was Goloff (prosecutors' witness) who dispensed those oxycodone prescriptions to "unkempt individuals". Officer Murphy deceived the jurors by failing to tell the jurors that the Petitioner was not working that day; this was done to confuse and mislead the jurors because Agent Murphy misrepresented to them as if the Petitioner was the pharmacist who dispensed these oxycodone prescriptions on October 2, 2012.

B. Falsely testified butalbital was prescribed by Dr. Parades-Mitchel but there was no evidence presented at trial.

C. Further falsely testified about Palmer Pharmacy's invoices for "butalbital' but there is no evidence that exists.

D. Testified that on one of his surveillances he saw the Petitioner leaving the pharmacy with Peter Riccio. However, his testimony was intended to mislead the jurors. He did not tell them that Peter Riccio whom the Petitioner left the pharmacy

with was Peter A. Riccio, as indicated in his investigative report, the uncle of Peter J. Riccio, who was not part of the "conspiracy".

E. Testified that on 4/23/2012 Palmer Pharmacy logged in as rxs manager Lena Congstang-Lasher. However, Agent Murphy misled the Court and the jury by not disclosing that the Petitioner was not on duty at Palmer Pharmacy that day. Agent Murphy knew the petitioner was not on duty, otherwise he would disclose that he saw the petitioner. He also knew that another pharmacist was illegally using the Petitioner's name to dispense prescriptions since her last name was misspelled and she has never gone by that particular last name.

Officer Murphy's false and misleading testimonies denied the Plaintiff a fair trial, thus violating her 5th Amendment Right, a constitutional violation.

6. The defendant agencies failed to deliver the required information which further causes additional delay damage and undue hardship for the plaintiff.

7. The DEA and its agents do not qualify for absolute or qualified prosecutorial immunity due to their knowingly presenting false, misleading testimony, planted/tampered/fabricated evidence, and withheld the exculpatory evidence to the Court and the jury to obtain a (wrongful) conviction, thus depriving the Plaintiff of her fair trial rights. The Plaintiff will be further damaged and at a further disadvantage and hardship without a hearing to present her case and evidence to dispute those of the hearsay prosecutors' witnesses, the DEA agents. The Plaintiff has the Constitutional right to face her accusers. Also, the Plaintiff refuses to be victimized any further by the justice system and the DEA. She is in no danger of practicing. Therefore, a hearing where she can have the opportunity to present suppressed/tampered/withheld documentation, facts, and evidence would show her innocence and wrongful conviction, and provide her with the justice she deserve.

## PRAYER FOR RELIEF

Plaintiff requests that:

1. The DEA and its agents Sheridan, Popowich, Germano, Murphy, Rego, and Fischer, of Newark, NJ, defendants, beside promptly answering the complaint, to be required to file a certified copy of the transcript of the record, including the evidence on which the findings and decision are based.

The "wrongful" conviction due to the Agents' false and misleading testimony, planted/tampered/fabricated evidence, and withheld the exculpatory evidence is unfair and bias in that Plaintiff's 5th Amendment Due Process Substantial Right is violated, as in Meyer v. NE (1923), Pierce v. Society of Sisters of the Holy Names of Jesus and Mary, Moore v. City of East Cleveland, OH, Skinner v. State of OK (1942). Due to the DEA and its agents' misconduct, the plaintiff was deprived of live, liberty, and property; the Plaintiff was denied her Due Process Clause of the Fifth Amendment, a constitutional violation.

2. The DEA and its agents be ordered and directed to order payment of the plaintiff's claim by the U.S. Treasury Dept.; the plaintiff is seeking compensatory damages, punitive damages, costs of suit, counsel fees for this judgment.

3. The plaintiff is asking for a trial by jury whereas she can provide evidence, via pharmacy paper trail, pharmacy business records, pharmacy law, unredacted pharmacists' write-ups, the agents' own spreadsheets, and the suppressed video recordings to display their false testimonies, just to convict the Plaintiff. The plaintiff can not be guilty of a crime she was not there to commit, and which she did not agree to commit, more so, for an act that she did not condone. The unredacted write-ups in themselves show clearly that the Plaintiff reprimanded the testifying witnesses, for the very act that the government presented as being directed by the Plaintiff.

The plaintiff intend to bring in expert witnesses, previous employees of Hellertown Pharmacy and Palmer Pharmacy & Much More, MURP representative, to contradict the agents' false testimonies. The Government recently turned the suppressed video recordings over to the plaintiff, which is in the possession of the Bureau of Prisons (BOP) Camp Unit manager Ms. Mitchell.

4. The plaintiff is also requesting Judicial Review by filing this civil action.

5. The plaintiff has such other and further relief as may appear just and proper to the Court.

I declare under penalty of perjury that the foregoing is true and correct.

*lenalasher*

Signature of plaintiff, Lena Lasher
Register # 67662-054
Federal Correctional Institution
33 & 1/2 Pembroke Rd.
Danbury, CT 06811-3099

Signed this __1st__ day of __November__, 2017